**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ALPHONSO SANDERS, et al.,

    Plaintiffs,

    v.

JEFFREY A. BEARD, et al.,

    Defendants.

CIVIL ACTION NO. 3:09-CV-1384

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is the Motion *in Limine* filed by Defendants Art Varner, James Fouse, and William Felton. (Doc. 394.) In their motion, Defendants, current or former managers at the State Correctional Institution at Smithfield ("SCI–Smithfield"), contend that Plaintiffs Alphonso Sanders, Steve Stewart, Anthony Williams, Dwight Bowen, and John Diaz, who were, at all relevant times, incarcerated at SCI–Smithfield, have not exhausted their administrative remedies prior to instituting this action. For the reasons that follow, Defendants' motion will be granted in part and denied in part. Specifically, Plaintiff Williams' claims will be dismissed; all claims against Defendant Fouse will be dismissed; the remaining Plaintiffs' Eighth Amendment conditions of confinement claims against Defendants Varner and Felton will proceed to trial insofar as they seek injunctive relief and concern the ventilation system, air quality, and water quality at SCI–Smithfield; and Plaintiff Sanders' claims for monetary damages arising from his Eighth Amendment conditions of confinement claims against Defendants Varner and Felton will proceed to trial.

## BACKGROUND

### I. The Complaint

This case concerns Eighth Amendment claims brought by *pro se* Plaintiffs Alphonso Sanders, Steve Stewart, Anthony Williams, Dwight Bowen, and John Diaz pursuant to 42 U.S.C. § 1983. Plaintiffs, who were incarcerated at SCI–Smithfield at all relevant times,[1]

---

[1] Plaintiffs Sanders and Stewart remain incarcerated at SCI–Smithfield. Plaintiff Bowen is currently incarcerated at SCI–Pine Grove, Plaintiff Williams is currently

allege that their conditions of confinement were inadequate and that Defendants were deliberately indifferent to their medical needs. The remaining Defendants in this case are: (1) Art Varner, the former SCI–Smithfield Facility Maintenance Manager; (2) James Fouse, the current SCI–Smithfield Safety Manager; and (3) William Felton, the current SCI–Smithfield Facility Maintenance Manager.

In their Complaint, filed July 16, 2009, Plaintiffs allege that Defendants knowingly housed them in unsafe and life-threatening conditions, and that SCI–Smithfield was so unstable that it could collapse at any moment. (Doc. 1 at ¶¶ 28, 38.) Specifically, Plaintiffs were required to live and work in buildings "that are sinking and 'mold infested' . . . from years of flooding and water damage, poor and neglected maintenance." (*Id.* at ¶ 29.) They state that the prison has inadequate ventilation, which exposed them to secondhand tobacco smoke, viral and bacterial infections, stale air, odorous smells, and unusual amounts of dust, soot, dirt, and felt-like lint. (*Id.*) Plaintiffs claim that there are scabie and staphylococcus aureus outbreaks in SCI–Smithfield. (*Id.* at ¶ 43.) They further allege that the prison has "Sick Building Syndrome" that has caused ailments such as asthma, bronchitis, rhinitis, sinusitis, emphysema, and conjunctivitis. (*Id.* at ¶¶ 28, 32.) In addition, Plaintiffs allege that Defendants denied them proper medical care and concealed the hazardous conditions at the prison. (Doc. 1 at ¶¶ 30, 54.) They seek an injunction and compensatory and punitive damages. (*Id.* at ¶¶ 25, 111, 113.)

## II. The Grievances

### A. DC-ADM 804 Inmate Grievance System

The administrative procedure that Pennsylvania state inmates must use to prosecute grievances is laid out in the DOC's DC-ADM 804. (Defs.' Ex. 26.) This inmate grievance system consists of three stages. At the initial review stage, the inmate must submit a grievance to the Facility Grievance Coordinator within fifteen working days of the

---

incarcerated at SCI–Houtzdale, and Plaintiff Diaz is currently incarcerated at the Souza–Baranowski Correctional Center in Massachusetts.

event on which the grievance is based. (*Id.* at 5.) An inmate who is dissatisfied with the initial decision may appeal to the Facility Manager within ten working days from the date of the initial review decision. (*Id.* at 7.) If an inmate is dissatisfied with the Facility Manager's decision, he may then appeal to final review with the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") by filing an appeal within fifteen working days of the date of the Facility Manager's decision. (*Id.* at 9.) An inmate appealing a grievance to final review is responsible for providing SOIGA with all required documentation relevant to the appeal: photocopies of the initial grievance, initial review response, inmate appeal to the Facility Manager, and the Facility Manager's decision. (*Id.* at 10.) An inmate's failure to provide such documentation may result in the appeal being dismissed. (*Id.*)

DC-ADM 804 also dictates what information an inmate must include in his initial grievance. First, an inmate "will include a statement of facts relevant to the claim" in the initial grievance. (Defs.' Ex. 26 at 4.) The inmate "will identify any person(s) who may have information that could be helpful in resolving the grievance" as well. (*Id.* at 5.) Additionally, if an inmate "desires compensation or other legal relief normally available from a court, the inmate shall request the specific relief sought in his/her initial grievance." (*Id.*)

### B. Plaintiffs' Grievances

A search by Tracy Williams, a Grievance Review Officer for SOIGA, indicates that Plaintiffs filed the following grievances about the issues in their Complaint prior to instituting this action.

### 1. Plaintiff Sanders

On April 10, 2007, Plaintiff Sanders filed Grievance No. 184543. (Defs.' Ex. 28.) In the grievance, he alleges that the ventilation ducts at SCI-Smithfield are not cleaned frequently or thoroughly enough, which has contributed to "Sick Building Syndrome." (*Id.*) Plaintiff Sanders cites Sick Building Syndrome as the cause of his various ailments, such as respiratory discomfort and irritation of the eyes, nose, and throat. (*Id.*) He further claims that the prison's HVAC system circulates dust mites and mildew spores to each cell, and inadequate ventilation impairs the air quality of the prison block and cells each day.

3

(*Id.*)  In his grievance, he seeks $60,000.00 in compensatory damages as well as injunctive relief.  (*Id.*)  Specifically, he seeks to have the prison's HVAC system "opened . . . and thoroughly cleaned every 60 to 90 days" or, alternatively, an increased "outside air mixture into the system."  (*Id.*)  Plaintiff Sanders appealed this grievance to final review, but SOIGA upheld the initial and intermediate responses provided by SCI-Smithfield.

### 2.  Plaintiff Stewart

On April 16, 2007, Plaintiff Stewart filed Grievance No. 184834.  (Defs.' Ex. 27.)  In the grievance, he claims that something is wrong with the ventilation system at SCI-Smithfield and that he has developed a breathing problem since being incarcerated there.  (*Id.*)  He also complains of chest pains, headaches, and a burning sensation in his eyes and nose.  (*Id.*)  Plaintiff Stewart does not request any specific relief in his grievance. He appealed this grievance to final review, but SOIGA upheld the initial and intermediate responses provided by SCI-Smithfield.

### 3.  Plaintiff Diaz

On July 27, 2007, Plaintiff Diaz filed Grievance No. 195311.  (Defs.' Ex. 29.)  In the grievance, he claims that the ventilation system at SCI-Smithfield "emits a poor quality of recycled air" and circulates odors from other cells, germs and viruses from ill prisoners, and dust-like particles that irritate the eyes, nose, throat, and lungs.  (*Id.*)  Beyond requesting that the ventilation and air remedy of H-Block be remedied, Plaintiff Diaz does not seek any specific relief.  He appealed this grievance to final review, but SOIGA upheld the initial and intermediate responses provided by SCI-Smithfield.

### 4.  Plaintiff Williams

On April 18, 2008, Plaintiff Williams filed Grievance No. 226179.  (Defs.' Ex. 32.) In the grievance, he claims that he has not been receiving medical treatment for his allergic vasomotor rhinitis despite notifying the proper medical personnel at SCI–Smithfield.  (*Id.*) He alleges that his condition has been aggravated by inadequate ventilation at the prison, as its HVAC system contains dust, germs, and foul odors that make it difficult for him to breathe.  (*Id.*)  Plaintiff Williams claims that his Eighth Amendment rights have been

4

violated by the prison's deliberate indifference to his medical needs and requests punitive damages of $10,000.00. (*Id.*) SOIGA dismissed the grievance at the final appeal stage because Plaintiff Williams did not include all necessary documentation, despite being notified by SOIGA of this deficiency. (*Id.*; Doc. 395, Ex. B at 5.)

### 5. Plaintiff Bowen

On April 28, 2009, Plaintiff Bowen filed Grievance No. 270740. (Defs.' Ex. 30.) In the grievance, he claims that there was a "burnt rubber smell" coming from the vents at SCI-Smithfield that irritated his throat, caused asthma inflammation, and made him voimt. (*Id.*) Plaintiff Bowen notes that he seeks "monetary compensation in the highest amount" and will also seek court assistance. (*Id.*) SOIGA dismissed this grievance at the final appeal stage because Plaintiff Bowen did not provide all necessary documentation, despite being notified of the deficiency. (*Id.*; Doc. 395, Ex. B at 3.)

On June 13, 2009, Plaintiff Bowen filed Grievance No. 276814. (Defs.' Ex. 31.) In the grievance, he claims that the water in the sink in his cell at SCI-Smithfield smelled bad, tasted strange, and caused him gastrointestinal problems. (*Id.*) He hypothesizes that the water smells "as if it's in something," possibly dead rats. (*Id.*) Plaintiff Bowen does not request any specific relief in this grievance. He appealed this grievance to final review, but SOIGA upheld the initial and intermediate responses provided by SCI-Smithfield.

## III. The Affirmative Defense

In their Answer, Defendants plead the affirmative defense of Plaintiffs' failure to exhaust administrative remedies. (Doc. 105 at 27.) Defendants did not, however, raise this defense in their Motion for Summary Judgment (Doc. 316), which was denied by the Court on May 2, 2011 (Doc. 344). Rather, Defendants argued that Plaintiffs failed to exhaust their administrative remedies in a pre-trial memorandum filed on January 18, 2012 (Doc. 393) and a motion *in limine* filed the following day (Doc. 394). Although the Court granted Plaintiffs' request for an extension of time to respond to Defendants' motion on February 27, 2012 (Doc. 413), Plaintiffs did not file a response. Accordingly, the Court held a hearing on April 15, 2013, to determine whether Plaintiffs exhausted their administrative

5

remedies. Defendants' motion is now ripe for disposition.

## **LEGAL STANDARD**

Pursuant to the Prison Litigation Reform Act ("PLRA"), before a prisoner may bring a civil rights action pursuant to 42 U.S.C. § 1983, or any other federal law, he must exhaust all available administrative remedies. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. "[T]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 212 (2007). A prisoner is not required to allege in his complaint that administrative remedies have been exhausted. *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002). As failure to exhaust available remedies is an affirmative defense, it must be pleaded and proven by Defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002). Defendants' failure to make a timely dispositive motion based on this affirmative defense does not mean that they have waived the defense. *See Drippe v. Gototweski*, 434 F. App'x 79, 81 (3d Cir. 2011).

Whether a prisoner has exhausted his administrative remedies is a question of law to be determined by the court. *Womack v. Smith*, 1:06-CV-2348, 2011 WL 819558 (M.D. Pa. Mar. 2, 2011) (citing *Drippe v. Tobelinski,* 604 F.3d 778, 781–82 (3d Cir. 2010)). Factual disputes as to whether a prisoner has exhausted his remedies do not convert the exhaustion question into a jury matter; the court must resolve any factual disputes and determine whether exhaustion requirements have been satisfied. *Id.* (citing *Drippe*, 604 F.3d at 781–82). The court must consider: (1) whether the prisoner has exhausted his or her administrative remedies "in the literal sense," in other words, "whether further avenues of relief are available to him [or her] within the prison's inmate grievance process," and (2) whether the prisoner has procedurally defaulted his or her claims. *Spruill v. Gillis,* 372 F.3d 218, 232 (3d Cir. 2004). "Compliance with prison

6

grievance procedures therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones v. Bock*, 549 U.S. 199, 218 (2007).

## **DISCUSSION**

Defendants argue in their motion *in limine* that Plaintiffs, through various deficiencies in their grievances or in navigating the grievance process, have failed to exhaust their administrative remedies. Their arguments will be addressed below.

### **I. Failure to Properly and Fully Appeal Grievances**

Defendants contend that because Plaintiffs Williams and Bowen had grievances dismissed at final review for not providing required documentation, they failed to exhaust their administrative remedies and have thus procedurally defaulted on their claims arising from these grievances. (Doc. 395 at 13–14.)

In a written declaration and hearing testimony, Ms. Williams stated that SOIGA dismissed Grievance No. 226179 at the final appeal stage because Plaintiff Williams did not include all necessary documentation and failed to remedy the deficiency after being informed of it. (Doc. 395, Ex. B at 5.) She also stated in her declaration and testimony that Grievance No. 270740, filed by Plaintiff Bowen, was dismissed by SOIGA at the final appeal stage for the same reason. (*Id.* at 3.)

DC-ADM 804 makes it clear that an inmate appealing a grievance to final review must provide SOIGA with all required documentation relevant to the appeal and that his failure to do so may result in the dismissal of the appeal. (Defs.' Ex. 26 at 10.) By failing to give SOIGA the required documentation for these grievance appeals, Plaintiffs Williams and Bowen have not followed the applicable procedures outlined in DC-ADM 804, which "supply the yardstick for measuring procedural default." *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). Because Plaintiff Williams and Plaintiff Bowen have failed to exhaust their administrative remedies with respect to Grievance No. 226179 and Grievance No. 270740, respectively, they have procedurally defaulted and cannot bring claims arising from these grievances. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("[T]here is no question that . . . unexhausted claims cannot be brought in

court.") As Grievance No. 226179 is the only grievance filed by Plaintiff Williams that is relevant to this case, his claims against all Defendants will be dismissed and all of his pending motions will be dismissed as moot.[2]

Because the remaining grievances filed by Plaintiffs Sanders, Diaz, Stewart, and Bowen were properly and fully appealed to final review, their claims arising from their grievances will remain in the case and proceed to trial, provided that these Plaintiffs have complied with all requirements of the DC-ADM 804 inmate grievance system. The remainder of the Court's inquiry will determine whether they have done so.

## II. Failure to Allege Denial of Medical Care or Other Building Infirmities

Defendants also argue that the scope of the Complaint filed by Plaintiffs Sanders, Diaz, Stewart, and Bowen is impermissibly broad in relation to the scope of their grievances. (Doc. 395 at 11–13.) Defendants assert that Plaintiffs should be precluded from bringing claims in court about SCI–Smithfield's structural integrity and denial of proper medical care, as Plaintiffs' grievances only concern the ventilation system and quality of water and air at the prison. (*Id.*)

In their grievances, Plaintiffs Sanders, Diaz, and Stewart only address the ventilation system at SCI–Smithfield and the health issues that they have allegedly developed from inadequate ventilation at the prison. The remaining grievance filed by Plaintiff Bowen only concerns the taste and smell of the water in his prison cell's sink and the health issues that it has allegedly caused him. However, Plaintiffs make a host of allegations in their Complaint that are not mentioned in their grievances. Specifically, they allege that Defendants knowingly housed them in unsafe and life-threatening conditions at SCI–Smithfield, which was a "death trap" and "could collapse at any time." (Doc. 1 at ¶¶ 28, 37–38.) Plaintiffs also allege that the prison was mold-infested and

---

[2] Although Plaintiff Williams has moved for the appointment of counsel (Doc. 499), having done so unsuccessfully twice before (Doc. 211, Doc. 455), the Court notes that multiple attempts have been made to find pro bono counsel for Plaintiffs. Even if he had the benefit of counsel, he would be unable to overcome the hurdle presented by his failure to exhaust his administrative remedies.

8

sinking from years of flooding, water damage, and poor maintenance.  (*Id.* at ¶ 29.) They further allege that Defendants denied them proper medical care and concealed the hazardous conditions at SCI–Smithfield.  (*Id.* at ¶¶ 30, 54.)

As DC-ADM 804 requires an inmate to "include a statement of facts relevant to the claim" in his initial grievance (Defs.' Ex. 26 at 4), Plaintiffs' failure to allege non-ventilation deficiencies in the prison's structure and denial of proper medical care in their grievances constitutes a failure to exhaust their administrative remedies.  Thus, Plaintiffs have procedurally defaulted their Eighth Amendment conditions of confinement claims insofar as they address issues not mentioned in Plaintiffs' grievances, and their Eighth Amendment denial of medical care claims.  Accordingly, these claims may not proceed to trial.

## III.  Failure to Request Monetary Damages

Defendants further contend that Plaintiffs Diaz, Stewart, and Bowen have failed to exhaust their claims for monetary damages in their Complaint because they have not requested such relief in their grievances.  (Doc. 395 at 4–9.)  It is undisputed that, unlike Plaintiff Sanders, these Plaintiffs have not sought monetary damages in their grievances.  It is also clear that if an inmate "desires compensation or other legal relief normally available from a court," DC-ADM 804 requires him to request the specific relief sought in his initial grievance.  (Defs.' Ex. 26 at 5.)  Because Plaintiffs Diaz, Stewart, and Bowen did not request monetary damages, which qualifies as "compensation or other legal relief normally available from a court," in their grievances, they cannot do so in their Complaint.  Their claims for monetary damages will be dismissed, but their claims for injunctive relief against Defendants will remain in the case and proceed to trial.  Plaintiff Sanders' claims for monetary damages and injunctive relief against Defendants will also remain in the case and proceed to trial, as he requested both types of relief in his initial grievance.

## IV.  Failure to Mention Defendants or Allege Mistreatment by Defendants

Finally, Defendants argue that Plaintiffs Sanders, Diaz, Stewart, and Bowen

9

have failed to exhaust their administrative remedies because their grievances do not mention any Defendant by name or claim that any Defendant acted improperly or mistreated them in any way. (Doc. 394 at 9–11.) They contend that Plaintiffs were required to do so, as DC-ADM 804 states that an inmate "will include a statement of facts relevant to the claim" and "will identify any person(s) who may have information that could be helpful" in his initial grievance. (Defs.' Ex. 26 at 4–5.)

It is undisputed that these Plaintiffs have not identified any Defendant in their grievances. To the extent that these remaining Defendants were persons who may have had information that could be helpful in resolving the grievance or that their identities were facts relevant to the claims, Plaintiffs were required to identify them in their grievances. Plaintiffs Sanders, Diaz, Stewart, and Bowen have thus procedurally defaulted their claims against Defendants Felton, Varner, and Fouse.

However, it is possible for Plaintiffs' procedural default to be excused. The United States Court of Appeals for the Third Circuit has said that:

> The purpose of [the DC-ADM 804's requirement that the grievance identify specific persons] is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing. As such, the prison can excuse an inmate's failure to [name a Defendant] by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance.

*Spruill v. Gillis*, 372 F.3d 218, 234 (3d Cir. 2004); *see also Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007) (refusing to dismiss claim for failure to name defendant in grievance where it was clear that prison officials knew of defendant's involvement from the context of the grievance). In addition to excusal through the prison's grievance review process, this Court has excused a *pro se* inmate's failure to name a defendant in his initial grievance because it was not practicable for him to do so. See *Chimenti v. Mohadjerin*, No. 3:01-CV-273, 2008 WL 2251603, at *4–5 (M.D. Pa. June 24, 2008).

In this case, Plaintiffs' grievances concerned the health issues that they allegedly developed due to the ventilation system and water at SCI–Smithfield. Defendant Felton, a Facility Maintenance Manger at the prison, authored the initial response to the

10

grievances filed by Plaintiffs Sanders, Diaz, and Stewart.[3] He was also copied on the superintendent's intermediate-level responses to those grievances. Defendant Varner, a former Facility Maintenance Manager at SCI–Smithfield, did not author a response to any of Plaintiffs' grievances, but was copied on the superintendent's intermediate-level response to Plaintiff Stewart's grievance. Therefore, Plaintiffs' procedural default with respect to Defendants Felton and Varner has been excused by the prison's grievance review process, which has identified these Defendants and acknowledged that they, as maintenance managers, were "fairly within the compass" of the grievances, which set forth the substance of Plaintiffs' claims against them.

Even if the prison's grievance review process had not identified Defendants Felton and Varner, Plaintiffs' failure to name them would be excused because they have explained that it was not practicable for them to name or identify the individuals responsible for maintenance at the prison. See *Chimenti*, 2008 WL 2251603, at *4–5; *see also Victor v. SCI Smithfield*, No. 3:08-CV-1374, 2011 WL 3584781, at *6 (M.D. Pa. Aug. 12, 2011) ("It is only the 'unexplained failure to identify a responsible prison official in a grievance [that] constitutes a procedural default of the claim.") (internal citations omitted). Accordingly, the Eighth Amendment conditions of confinement claims brought by Plaintiffs Sanders, Diaz, Stewart, and Bowen against Defendants Felton and Varner will remain in the case and proceed to trial.

However, Plaintiffs' procedural default with respect to Defendant Fouse has not been excused. Defendant Fouse, the Safety Manager at SCI–Smithfield, was not identified in any way in the prison's grievance review process. Additionally, Plaintiffs have not explained why it was not practicable for them to name or identify him. Therefore, all claims brought against Defendant Fouse by Plaintiffs Sanders, Diaz, Stewart, and Bowen will be dismissed from the case.

---

[3] Tim Greenland, who worked as a Facility Maintenance Manager at SCI–Smithfield, authored the initial response to Plaintiff Bowen's grievance. Mr. Greenland was a Defendant in this case, but passed away in 2012. (Doc. 506.)

11

In sum, Defendants' Motion *in Limine* (Doc. 394) will be granted in part and denied in part.[4] The Eighth Amendment conditions of confinement claims brought by Plaintiffs Sanders, Diaz, Stewart, and Bowen against Defendants Felton and Varner will remain in the case and proceed to trial insofar as the claims concern the ventilation system, air quality, and water at SCI–Smithfield and seek injunctive relief. Additionally, Plaintiff Sanders may seek monetary damages from Defendants Felton and Varner in conjunction with his Eighth Amendment conditions of confinement claim. Plaintiff Williams' claims against all Defendants will be dismissed, all pending motions filed by Plaintiff Williams will be dismissed as moot, and all claims against Defendant Fouse will be dismissed.

## **CONCLUSION**

For the reasons stated above, Defendants' Motion *in Limine* (Doc. 394) will be granted in part and denied in part.

An appropriate order follows.

| | |
|---|---|
| April 19, 2013<br>Date | /s/ A. Richard Caputo<br>A. Richard Caputo<br>United States District Judge |

---

[4] Although Defendants' motion also argues that Plaintiffs and their witnesses should be precluded from testifying as to the cause of their alleged injuries, as they have not provided a medical expert report on the matter, the Court will defer ruling on this issue until the time of trial.